Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Parfums Christian Dior, S.A.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARFUMS CHRISTIAN DIOR, S.A.,<br><br>*Plaintiff*<br><br>v.<br><br>CHONGQING AQUA TRADING CO., LTD., CHONGQING QIJING E-COMMERCE CO., LTD., CHONGQING QINGYITANG TRADING CO., LTD., FOSHAN FANLENTINA TECHNOLOGY CO., LTD., GANSU HUATUO XINHUI TRADING CO., LTD., GANSU TINGLI TRADING CO., LTD., GUANGZHOU MAILAIFU BIOTECHNOLOGY CO., LTD., GUANGZHOU OUYELI COSMETIC CO., LTD., GUANGZHOU UNIQUE AROMA CO., LTD., GUANGZHOU XINZHENG TRADING CO., LTD., GUANGZHOU ZHENXIN FLAVORS & FRAGRANCES CO., LTD., HEBEI CHEFHI INTERNATIONAL TRADE CO., LTD., HK MIAOSI INTERNATIONAL CO., LIMITED, JIANGMEN JIANGHAI ANYIN TRADING CO., LTD., JINGKAI DISTRICT MINYAQIN DEPARTMENT STORE, MANNIKANG (SHENZHEN) TECHNOLOGY CO., LTD., QUANZHOU FENGZE DISTRICT HAOTONG | 25-cv-2733 (AKH)<br><br>~~[PROPOSED]~~<br>**PRELIMINARY**<br>**INJUNCTION ORDER** |

TRADING CO., LTD., SENFULL (GUANGDONG) TECHNOLOGY CO., LTD., SHANGHAI ROFEE INDUSTRY CO., LTD., SHANGHAI YIKEMAI INDUSTRIAL CO., LTD., SHAODONG CITY YEJIPING TOWN SHANGWEI DEPARTMENT STORE, SHENZHEN BEILISI TRADING CO., LTD., SHENZHEN FUHENGJIE TECHNOLOGY CO., LTD., SHENZHEN GLASSONE TRADING CO., LTD., SHENZHEN KAICHENXING TECHNOLOGY CO., LTD., SHENZHEN LONGGANG DISTRICT SHIYUN DAILY DEPARTMENT STORE, SHENZHEN YINGFEIER TRADING CO., LTD., SHISHI CITY JUN XIU CLOTHING FIRM, XIAMEN TONGAN DISTRICT BILLION RICKS DEPARTMENT STORE, XIAMEN YUCAI COSMETICS CO., LTD., YIWU JIAMAI TRADE CO., LTD., YIWU JOINWAVE TRADING COMPANY, YIWU JUKE E-COMMERCE CO., LTD. and YIWU ZZ TRADING CO., LTD.,

*Defendants*

## GLOSSARY

| Term | Definition |
|------|------------|
| **Plaintiff or Dior** | Parfums Christian Dior, S.A. |
| **Defendants** | Chongqing Aqua Trading Co., Ltd., Chongqing Qijing E-Commerce Co., Ltd., Chongqing Qingyitang Trading Co., Ltd., Foshan Fanlentina Technology Co., Ltd., Gansu Huatuo Xinhui Trading Co., Ltd., Gansu Tingli Trading Co., Ltd., Guangzhou Mailaifu Biotechnology Co., Ltd., Guangzhou Ouyeli Cosmetic Co., Ltd., Guangzhou Unique Aroma Co., Ltd., Guangzhou Xinzheng Trading Co., Ltd., Guangzhou Zhenxin Flavors & Fragrances Co., Ltd., Hebei Chefhi International Trade Co., Ltd., HK MiaoSi International Co., Limited, Jiangmen Jianghai Anyin Trading Co., Ltd., Jingkai District Minyaqin Department Store, Quanzhou Fengze District Haotong Trading Co., Ltd., Senfull (guangdong) Technology Co., Ltd., Shanghai ROFEE Industry Co., Ltd., Shanghai Yikemai Industrial Co., Ltd., Shaodong City Yejiping Town Shangwei Department Store, Shenzhen Beilisi Trading Co., Ltd., Shenzhen Glassone Trading Co., Ltd., Shenzhen Kaichenxing Technology Co., Ltd., Shenzhen Longgang District Shiyun Daily Department Store, Shenzhen Yingfeier Trading Co., Ltd., Shishi City Jun Xiu Clothing Firm, Xiamen Tongan District Billion Ricks Department Store, Xiamen Yucai Cosmetics Co., Ltd., Yiwu Jiamai Trade Co., Ltd., Yiwu Joinwave Trading Company, Yiwu Juke E-Commerce Co., Ltd. and Yiwu Zz Trading Co., Ltd. |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing |

| | |
|---|---|
| | bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Lambert Dec.** | Declaration of Nicholas Lambert in Support of Plaintiff's Application |
| **Levine Dec.** | Declaration of Melissa J. Levine in Support of Plaintiff's Application |
| **Dior Products** | High quality men's and women's iconic fragrances recognized for their timeless, sophisticated and luxurious scents |
| **Dior Marks** | U.S. Trademark Registration Nos.: 2,529,417 for " " for a variety of goods in Class 3; 577,253 for " *Miss Dior* " for a variety of goods in Class 3; 6,058,788 for " *Miss Dior* ROBE N'ROSES " for a variety of goods in Class 3; 3,085,164 for " *Miss Dior Chérie* " for a variety of goods in Class 3; 2,696,047 for "J'ADORE" for a variety of goods in Class 3; 2,455,674 for "J'ADORE" for a variety of goods in Class 3; 5,304,379 for "SAUVAGE" for a variety of goods in Class 3; 884,294 for "EAU SAUVAGE" for a variety of goods in Class 3; 2,823,387 for "FAHRENHEIT" for a variety of goods in Class 3; 1,482,938 for "FAHRENHEIT" for a variety of goods in Class 3. |
| **Counterfeit Products** | Products bearing or used in connection with the Dior Marks, and/or products in packaging and/or containing labels bearing the Dior Marks, and/or bearing or used in connection with marks that are confusingly similar to the Dior Marks and/or products that are identical or confusingly similar to the Dior Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online |

| | |
|---|---|
| | marketplace platforms such as Alibaba, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHEREAS, Plaintiff having moved *ex parte* on April 2, 2025 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on April 2, 2025 ("TRO") which ordered Defendants to appear on April 9, 2025 at 11:30 a.m.to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on April 4, 2025, Plaintiff wrote a letter to the Court requesting modification and extension of the TRO, including the date of the Show Cause Hearing;

WHEREAS, on the same day, April 4, 2025, the Court entered an Order granting Plaintiff's request and adjourning the Show Cause Hearing to April 24, 2025 at 2:30 p.m. ("April 24, 2025 Order");

WHEREAS, on April 16, 2025 pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application and the April 4, 2025 Order on each and every Defendant, except Defendants Mannikang (shenzhen) Technology Co., Ltd. and Shenzhen Fuhengjie Technology Co., Ltd.;

WHEREAS, on April 24, 2025 at 2:30 p.m., Plaintiff appeared at the Show Cause Hearing, however, none of the Defendants appeared.

## PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW

A.     Plaintiff is likely to prevail on its Lanham Act and related common law claims at trial.

B.     As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries:

1.  Defendants have offered for sale and sold substandard Counterfeit Products in the United States that infringe the Dior Marks; and

2.  Plaintiff has well-founded fears that more Counterfeit Products will appear in the United States marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Dior Products.

C.     The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a preliminary injunction order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Dior Marks and to its reputation if the relief granted in the TRO is not continued through the pendency of this action.

D.     Public interest favors issuance of the preliminary injunction order in order to protect Plaintiff's interests in and to its Dior Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Dior Products.

## ORDER

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this action, and issuing this Order is warranted under Federal Rule of Civil

~~Procedure 65 and Section 34 of the Lanham Act.~~

a) ~~Accordingly,~~ Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Dior Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Dior Marks;

    ii. operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order;

    iii. directly or indirectly infringing in any manner Plaintiff's Dior Marks;

    iv. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Dior Marks, to identify any goods or services not authorized by Plaintiff;

    v. using Plaintiff's Dior Marks and/or any other marks that are confusingly similar to the Dior Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

    vi. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised,

marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

vii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

viii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

ix. knowingly instructing any other person or business entity in engaging in any of the activities referred to in subparagraphs I(a)(i) through I(a)(viii) above and I(b)(i) and I(c)(i) below.

b) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers

and Financial Institutions who satisfy those requirements and are identified in this Order, are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

c) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order; and

    ii. instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(a)(i) through I(a)(viii), 1(b)(i) and 1(c)(i) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts in violation of this Order. *issued April 2, 2025*

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a) within five (5) days of receipt of notice of this Order, any newly discovered Financial

Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3.  As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

a)  Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

b)  Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

c)  Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control, relating to any and all of Defendants' Financial Accounts including, but not limited to, documents and records

relating to:

    i.  account numbers;

    ii.  current account balances;

    iii.  any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

    iv.  any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

    v.  any and all deposits and withdrawal during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

    vi.  any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the ~~identity of the beneficiary's bank and the beneficiary's account number~~;

d)  Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or aborad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

i.  any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C) of the TRO;

ii.  the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C) of the TRO;

iii.  the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

iv.  Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of counterfeit Products, or any other products bearing the Dior Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Dior Marks.

4.  As sufficient cause has been shown, and pursuant to Fed. R. Civ. P. 4(f)(3), service may

be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order to Defendants' e-mail addresses as identified by Alibaba pursuant to Paragraph V(C) of the TRO or may otherwise be determined.

5. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

b) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Alipay will be able to download a PDF copy of this Order via electronic mail to US_IPR_TRO_Requests@alipay.com;

c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba will be able to download a PDF copy of this Order via electronic mail to IPR_USTRO@service.alibaba.com;

d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at Third Party Requests at

thirdpartyrequests@payoneer.com; and

e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to trorequest@pingpongx.com.

6. As sufficient cause has been shown, such alternative service by electronic means as ordered in the TRO and herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

7. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. The $10,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

9. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this 24 day of April, 2025, at 2:50 p.m.
New York, New York

_____
HON. ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE